

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Paul E. Budlow*
*Assistant United States Attorney*
*Paul E. Budlow@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

DIRECT: 410-209-4917
MAIN: 410-209-4800

January 28, 2019

Desiree Lassiter, Esquire
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

Re:   United States v. Frank Ray Leary, Jr., Criminal #: CCB-18-603

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by Friday, February 1, 2019, at 5:00 p.m., it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1.   The Defendant plead guilty to Count One and Count Two of the Information now pending against him, each charging him with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). The Defendant admits that he is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

2.   The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the dates specified in Counts One and Two of the Information, in the District of Maryland, and elsewhere, the Defendant:

   a.   Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

1

Rev. May 2018

      b.     For the purpose of producing a visual depiction of such conduct; and

      c.     The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

## Penalties

3.     The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2251(a) | 15 years | 30 years | Life | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |
| 2 | 18 U.S.C. § 2251(a) | 15 years | 30 years | Life | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |

      a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

      b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

      c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

      d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

      e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

      f.     Collection of *Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is

nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Sex Offender Registration

4. The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

    c. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    d. The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By

agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

   e. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   f. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   g. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   h. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

   i. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

   j. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The

Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

6.   The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C.   §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

7.   This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree to the following Sentencing Guidelines:

a.   The stipulation of facts attached as Attachment A to this plea agreement specifically establishes the commission of additional offenses than those contained in the Information to be filed against the Defendant. Pursuant to § 1B1.2(c), those additional offenses shall be treated as if the defendant had been convicted of additional counts charging those offenses.

### Group 1 – Attempted Production of Child Pornography (Minor Victim 1):

b.   The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

c.   Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

d.   Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal: 36).

e.   Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 38).

### Group 2 – Attempted Production of Child Pornography (Minor Victim 2):

f.   The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

5

      g.     Pursuant to U.S.S.G. § 2G2.1(b)(1)(A), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36).

      h.     Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal: 38).

      i.     Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 40).

Group 3 – Production of Child Pornography (Minor Victim 3):

      j.     The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

      k.     Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 36).

      l.     Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 36).

Group 4 – Production of Child Pornography (Minor Victim 4):

      m.     The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

      n.     Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 34).

Group 5 – Production of Child Pornography (Minor Victim 5) **(COUNT ONE)**:

      o.     The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

      p.     Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

      q.     Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal: 36).

Rev. May 2018

    r.    Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 38).

### Group 6 – Attempted Production of Child Pornography (Minor Victim 6):

    s.    The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

    t.    Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

    u.    Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal: 36).

    v.    Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 38).

### Group 7 – Production of Child Pornography (Minor Victim 7) (COUNT 2):

    w.    The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

    x.    Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

    y.    Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 36).

### Group 8 – Distribution of Child Pornography:

    z.    The base offense level is twenty-two (22) pursuant to U.S.S.G. § 2G2.2(a)(2).

    aa.    Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the depictions involved prepubescent minors or minors under the age of twelve (12). (Subtotal: 24).

    bb.    Pursuant to U.S.S.G. §2G2.2(b)(3)(F), there is a two (2) level increase because the offense involved distribution. (Subtotal: 26).

cc.     Pursuant to U.S.S.G. §2G2.2(b)(4), there is a four (4) level increase because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, or sexual abuse or exploitation of an infant or toddler. (Subtotal: 30).

dd.     Pursuant to U.S.S.G. § 2G2.2(b)(5), there is a five (5) level increase because the defendant engaged in a pattern of activity involving the sexual exploitation of a minor. (Subtotal: 35).

ee.     Pursuant to U.S.S.G. §2G2.2(b)(6), there is a two (2) level increase because the offense involved the use of a computer. (Subtotal: 37).

ff.     Pursuant to U.S.S.G. §2G2.2(b)(7)(D), there is a five (5) level increase because the offense involved more than 600 images. (Subtotal: 42).

Grouping:

gg.     Count as one unit the group with the highest offense level (Group Eight) which is offense level 42. U.S.S.G. § 3D1.4(a). (One Unit)

hh.     Count as one unit each group that is 1 to 4 levels less serious than the most serious Group. U.S.S.G. § 3D1.4(b). (4 Units – Groups 1, 2, 5, 6 ~~& 8~~). *[handwritten: 2 3 DLL]*

ii.     Count as one-half unit each group that is 5 to 8 levels less serious than Group Ten. U.S.S.G. § 3D1.4(b). (1 ½ units – Groups 3, 4 & 7).

jj.     Accordingly, there are 6 ½ units applicable and a 5 level increase to Group Eight for an adjusted offense level of 47.

kk.     This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. (Subtotal: 44).

### Chapter Four Enhancement:

8. Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. Thus, the final anticipated offense level is 49.

9. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

10. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11(c)(1)(C) Plea

11. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of 360 months (30 years) of imprisonment in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

### Obligations of the Parties

12. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever lawful sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

14.   a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

    b. Specifically, but without limitation on the government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities including:

        i. The following items originally seized by law enforcement authorities from the Defendant's residence on August 1, 2018:

            1. ZTE mobile phone, Model ZTEN817, S/N 325774020A41.

    c. The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging

10

instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

    d.  The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

    e.  The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Restitution

  15.  The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Defendant's Conduct Prior to Sentencing and Breach

  16.  a.  Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers;

11

will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

        b. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Entire Agreement

17. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

        Very truly yours,

        Robert K. Hur
        United States Attorney

By: _____
        Paul E. Budlow
        Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3-8-19
Date

Frank Ray Leary, Jr.

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

3\8\19
Date

Desiree Lassiter

13

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Frank Ray Leary, Jr. ("Leary"), age 23, is a resident of Elkton, Maryland. As detailed below, Leary induced at least six minors to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct. Leary engaged in this conduct after having been previously investigated for child pornography activity and sexual abuse of a minor. For at least six years, Leary used various internet-based platforms to collect, store, and trade child pornography. Additionally, Leary sexually abuse a five-year old boy on multiple occasions.

### Leary's Child Pornography Activity in 2012:

In 2012, Leary was a user of a Peer-to-Peer file-sharing platform known for the trafficking of child pornography. After the Maryland State Police received information that Leary was using the platform to trade child pornography, a search warrant was executed at Leary's residence. During an interview with investigators, Leary admitted to trading child pornography. The child pornography Leary distributed included images of prepubescent minors engaged in sexually explicit conduct. Leary was 17 years old at the time of the investigation.

### Leary's Child Pornography Activity in 2015:

In 2015, Leary used the smart phone application Kik to communicate in group chats in which images and child pornography were traded between the members of the group. The group conversations occurred between September 3, 2015 and September 17, 2015. During the conversation, users discussed child pornography and child exploitation, shared files of child pornography, and commented on the shared files. The files of child pornography shared included depictions of prepubescent minors, some as young as toddlers, engaged in sexually explicit conduct. Leary did not comment or share any files. On September 7, 2015, one of the participants messaged the following to the group: "Post people or be removed," and "Everyone that hasn't posted in the last 24 hours will be kicked but those that have posted will be added to a private group....you have 24 hours!!!! Don't miss out!!!"

### Leary's Child Pornography Activity Using His Google Account (2014-2015):

Leary was the sole user of the Google email account learyelktn@gmail.com, which he used to distribute and store files of child pornography. The account contained approximately 8418 emails. Two examples of emails found in the account are as follows:

    a.     On October 21, 2014, Leary sent another user four emails, each containing one attached video file. Each of the four emails contained visual depictions of minors engaging in sexually explicit conduct and are child pornography under 18 U.S.C. § 2256(8). In one video, the title of which is "_Orgy_Boys_Jackie_Chan_-_Boys_In_Hotel_Room.mp4," several naked prepubescent and minor males perform various sex acts on each other to include masturbation, oral sex, and anal sex. The length of the video is approximately two minutes and twenty-nine seconds.

    b.     On January 3, 2015, Leary sent another user three emails, containing a total of five attached video files. All five of the video files contained visual depictions of minors engaging in sexually explicit conduct and are child pornography under 18 U.S.C. § 2256(8). In one video, the title of which is "IMG_2968.mp4," an adult male penetrates the mouth of a naked prepubescent male with his penis. The length of the video is approximately forty-eight seconds.

### Leary's Child Pornography Activity Using His Dropbox Account:

Leary also used a Dropbox account to store child pornography. Leary's Dropbox account contained numerous folders containing video and image files, including many files that are visual depictions of minors engaging in sexually explicit conduct and are child pornography under 18 U.S.C. § 2256(8). One video, titled "VID-20160808-WA0083.mp4," depicts a minor male's penis anally penetrating another prepubescent male. The video is four minutes and fifty-two seconds long. One video, titled "Video 07-08-2017, 05 41 26.mp4," depicts a male's penis anally penetrating a toddler male. The video is one minute and fifty-eight seconds long.

### 2018 Search and Interview of Leary:

On August 1, 2018, Leary's person and residence were searched. Investigators seized Leary's ZTE mobile phone, Model ZTEN817, S/N 325774020A41.

At the time of the execution of the warrant, Leary's ZTE phone was previewed and Kik group chat conversations were observed. Some of the display names for the group chats were: "BOYS 13-20(FACE AND ANYTHING)", "Gay Boys Chat 15-21 Face Pic to Admin (Dirty)", "Boys 8-16 (Must Send Live Pic to Verify)". Files of child pornography were found on the cell phone.

During the execution of the search warrant, Leary consented to an interview, which was audio recorded. Leary admitted that he was the user of the Dropbox account and that he placed

2

the child pornography files in the Dropbox account but that he has since deleted all of the files. Leary stated that he has a new Kik account that he uses to trade child pornography files, and that he used Kik as recently as two days earlier. Leary stated that he has viewed child pornography depicting sexual explicit conduct with as young as babies and toddlers and stated his preference is boys around the age of 7 to 9 years old. Leary said that he has communicated with other Kik users who have stated that they are between the ages of 12 to 16 years old. Leary has asked these users for naked pictures, and has received naked pictures that the users claim are of themselves.

### Leary's Exploitation of Minors Using Kik:

The forensic examination of the Leary's phone, as well as the execution of various provider search warrant, revealed that Leary has used the Kik application on his phone to entice minors to produce child pornography and send the child pornography to Leary. Examples of this conduct include:

### Minor Victim 1 (age 14-16) and Minor Victim 2 (age 9) (Baltimore County, Maryland):

On July 7, 2018, Leary engaged in a Kik chat with Minor Victim 1, who represented that he was approximately 14-16 years old. Leary directed the conversation to sex, and Minor Victim 1 said that he lived with his little brother (Minor Victim 2), who was 9 years old. Leary enticed Minor Victim 1 to sneak into Minor Victim 2's room while he was sleeping, take photographs of his penis, touch him sexually, and then masturbate and ejaculate on his face – and to take a photograph of that act. Leary's chats with Minor Victim 1 included the following:

- That's even better if he went to sleep that means you can do a Lil more to him;
- If you and your Lil brother were alone for let's say 2 days straight would u teach him how to suck cock;
- Would you like for me to help you get your Lil brother into playing With your cock
- Does he have his own room
- Do you know if he also sleeps naked
- Let's make a deal if you were to take pics of him you would show only his body and down but not face agree
- The only time you could take a pic of his face is of you got him to suck your OK
- Go see if he's awake or not
- And if you do cum I'd love to see you do it
- You want to start getting naughty with your brother now or do want to wait
- That's even better if he went to sleep that means you can do a Lil more to him
- Sneak into his room and I'll tell you

3

➢ Once your in take your cock out and start jerking

After it was clear that Minor Victim 1 was in his brother's room

➢ Can you see him naked
➢ Can I see him
➢ But remember as we agreed
➢ No face unless you get him to suck your cock
➢ So anyway choose a place that you want to cum on him
➢ His your real name [Minor Victim 1]
➢ So did you cum on him
➢ Where do you want to cum on him
➢ Face or feet
➢ I flipped a coin
➢ Heads for face tails for feet
➢ And it looks like you get to cum all over his face
➢ Or if you can some how pull the sheets down enough to where you can cum on his belly or ass or cock
➢ Would it be to dark to make a quick vid of you cumming on him
➢ And did you cum on him
➢ Can I see you cum julian

### Minor Victim 3 (14, Germany):

Minor Victim 3 ▓▓▓▓▓▓▓: On July 7, 2018, Leary engaged in a Kik chat with Minor Victim 3, who represented that he was 14 years old. During the chat, Minor Victim 3 sent a picture of his penis to Leary, at Leary's request.

### Minor Victim 4 (17, California):

Minor Victim 4 ▓▓▓▓▓▓▓: On July 8, 2018, Leary engaged in a Kik chat with Minor Victim 4, who represented that he was 17 years old. During the chat, Minor Victim 4 sent a picture of his penis to Leary, at Leary's request. Minor Victim 4 is a resident of California and was 17 years old at the time of the conversation with Leary.

### Minor Victim 5 and Minor Victim 6 (Bulgaria) (COUNT 1):

Minor Victim 5 ▓▓▓▓▓▓▓:

On July 8, 2018, Leary engaged in a Kik chat with Minor Victim 5. During the chat, Leary asked Minor Victim 5 to take sexually explicit pictures of Minor Victim 5 and his sister, Minor Victim 6. No ages were provided during the chat, although Minor Victim 5 does refer to

4

his mother multiple times (one example follows). Leary's chats with Minor Victim 5 included the following:

- Would u knock ur sister out or drug her
- Ask your friend if he would be willing to help you use your sister for sex
- U won't get in trouble if u do Wat I say
  - Minor Victim 5 replied: She'll tell mom
- Get her drunk if you can Or give her something to sleep and she won't wake up
  - Minor Victim 5 replied: I'll go wake my sister now.
  - I got 2 pics but she started to cry so I had to stop and calm her down
  - Do you want the pics?
- Show me them

Minor Victim 5 then sent Leary two images. The first depicts a young female, who appears prepubescent, standing next to what appears to be a bed, her pants are pulled down exposing her vagina, and she is pulling her shirt up. The second image depicts what appears to be the same girl, the photo is taken from behind the girl who is on all fours and completely naked, with her anus and vagina exposed. Leary then texted "Mmmm" and Minor Victim 5 replied, "I made her do the second one and that's why she cried". Later he texted, "I hope she doesn't tell mom that I made her go on her knees naked".

After the text and image exchanges described above, Leary texted, "You ready to do everything I want now" and Minor Victim 5 agreed. Leary then directed Minor Victim 5 to undress and take various sexual images and videos of Minor Victim 5, including a video of Minor Victim 5 masturbating, inserting an object into his anus, and another video of Minor Victim 5 urinating into his own mouth. Minor Victim 5 complied with the requests, and sent the images and videos to Leary as directed.

Minor Victim 5 is a resident of Bulgaria, and was 15 years old at the time of the chats with Leary. Minor Victim 5 does not have a younger sister, and the images of a female that he sent to Leary were images that he obtained from the internet.

### Minor Victim 7 (13, Kentucky) (COUNT 2):

Minor Victim 7 ▮▮▮▮▮▮▮▮▮▮: On July 13, 2018, Leary engaged in a Kik chat with Minor Victim 7, who represented that he was 13 years old. During the chat, Leary sent Minor Victim 7 an image of his penis, and then requested that Minor Victim 7 send an image of Minor Victim 7's penis, which he did.

5

### Sharing Child Pornography

During many of Leary's chats with minor on Kik, he shared images and videos of child pornography with them by sending links to cloud accounts such as Mega and Dropbox. This conduct over a period of time, including 2018, and including in some of the chats mentioned above.

### Leary's Sexual Abuse of Minor Victim 8, Age 5:

Leary sexually abused Minor Victim 8, in or about 2017-2018. Minor Victim 8 was born in 2013, and was 5 years old when he disclosed that Leary forcible penetrated Minor Victim 8's mouth with his penis approximately sixteen times.

On March 13, 2018, Leary, was interviewed and denied that he had sexually abused Minor Victim 8. Leary did, however, describe several incidents when Minor Victim 8 saw Leary's penis and that Minor Victim 8 asked to touch Leary's penis. Leary also described instances when Minor Victim 8 walked into Leary's bedroom or bathroom and saw Leary naked, including times when Leary was masturbating. Leary stated that Minor Victim 8 repeatedly asked to touch Leary's penis. Leary described one occasion when he was masturbating with his eyes closed and began to ejaculate. According to Leary, as he opened his eyes, Minor Victim 8 was standing next to him and Minor Victim 8 touched Leary's penis and ejaculate got on Minor Victim 8's hand. Minor Victim 8 then placed the ejaculate in his own mouth. Leary stated he did not see Minor Victim 8 taste the ejaculate but heard Minor Victim 8 say, "ugh this tastes horrible."

### Materials in Interstate Commerce & Transportation of Images in Interstate Commerce:

Leary attempted to and did cause the production of child pornography as described above, through the use of mobile phones/digital cameras that were manufactured outside of the United States, and intending that the images would be transported in interstate commerce. Leary therefore had reason to know that the images would be transported in interstate commerce, and that the images would be produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce.

Prior to Leary's possession and distribution of the visual depictions of child pornography, the files were transported in or affecting interstate or foreign commerce, and were produced using materials that had been transported in or affecting interstate or foreign commerce.

The computers, digital storage devices, and the camera seized from Leary's residence were manufactured outside the state of Maryland.

6

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case

3-8-19
Date

*[signature]*
Frank Ray Leary, Jr.

I am Mr. Leary, Jr.'s attorney. I have carefully reviewed the statement of facts with him. He acknowledges it is true and correct and he knowingly and voluntarily agrees to it.

3/8/19
Date

*[signature]*
Desiree Lassiter, Esq.
Counsel for Frank Ray Leary, Jr.